O

# United States District Court
# Central District of California

| | |
|---|---|
| HARRY GERS et al., | Case № 2:19-cv-08003-ODW (Ex) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [22]** |
| NEW ROADS SCHOOL et al., | |
| Defendants. | |

## I.     INTRODUCTION

Before the Court is Defendant New Roads School's Motion to Dismiss Plaintiffs Harry Gers, Jenn Gers, and Glenn Gers's First Amended Complaint ("Motion").  (Mot., ECF No. 22.)  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.[1]

## II.     BACKGROUND

Harry[2] was a student at New Roads School ("New Roads" or the "School") between September 2012 and November 2016.  (First Am. Compl. ("FAC") ¶ 17, ECF No. 21.)   Harry has a learning disorder, generalized anxiety disorder, and autism

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] To avoid confusion, the Court respectfully refers to Plaintiffs by their given names.

spectrum disorder, and requires accommodations and related aids and services at school.  (FAC ¶¶ 13–15.)  In December 2013, Jenn and Glenn, Harry's parents, obtained a neuropsychological evaluation to determine the nature of Harry's conditions and their impact on school, and shared the evaluation with the School and its employees.  (FAC ¶¶ 18–19.)  In June 2015 and June 2016, Jenn informed the school that Harry had been missing a substantial number of school days due to anxiety, depression, and panic attacks and requested accommodations and support; the School approved some of the requested accommodations.  (FAC ¶¶ 20–29.)

In June 2016, the Gerses signed a New Roads student enrollment contract ("Enrollment Contract") for the 2016–2017 school year, during which Harry would matriculate as a sixteen-year-old tenth grader.  (FAC ¶¶ 10, 30, 37.)  The Gerses prepaid tuition for the entire school year.  (FAC ¶ 30.)  Under the Enrollment Contract, enrollment fees are nonrefundable, and the parents are obligated to pay tuition "whether or not the student completes the school year, is withdrawn, absent, or dismissed, for all or any portion of the school year."  (FAC ¶¶ 32–34.)  The Enrollment Contract states that the School reserves the right to dismiss the student under certain circumstances, including when "the student has been unable to meet the academic, social[,] or behavioral standards of the school."  (FAC ¶¶ 34–35.)

In August 2016, Glenn informed a School official of Harry's ongoing anxiety issues and treatment, and requested support from administrators and staff for Harry's disability-related needs.  (FAC ¶ 38.)  The School failed to provide the requested accommodations.  (FAC ¶ 39.)  Between September and November 2016, both Jenn and Glenn complained to administrators about the School's failure to accommodate Harry's disabilities and requested emergency meetings to discuss support and accommodations for Harry.  (FAC ¶¶ 41–43.)  The School was unresponsive.  (FAC ¶ 43.)  On October 21 and November 7, 2016, Harry's psychiatrist called the School's psychologist with proposed accommodations, including the temporary reduction of Harry's school days and course schedule.  (FAC ¶¶ 44–45.)

On November 16, 2016, Jenn and Glenn met with School employees.  (FAC ¶¶ 46–47.)  The School and its employees refused to engage in the interactive process to discuss accommodations at this meeting; instead, the School's representatives informed Jenn and Glenn that Harry would be dismissed because he could not attend as a full-time student.  (FAC ¶¶ 48–49.)

In December 2016, Jenn and Glenn requested that the School refund tuition because it had unjustly dismissed Harry due to his disabilities.  (FAC ¶ 52.)  The School did not respond to the request.  (FAC ¶ 52.)  As a result of his dismissal, Harry experienced emotional distress and the Gerses faced difficulties timely locating a comparable school, which delayed the completion of Harry's high-school education.  (FAC ¶¶ 53–55.)

The Gerses initiated this action on September 16, 2019.  (*See* Compl., ECF No. 1.)  In the operative FAC, Harry brings the first claim for disability discrimination in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, and fourth claim for violation of the Unruh Civil Rights Act, California Civil Code section 51(f).  (FAC ¶¶ 56–71, 103–10.)  Additionally, all three Gerses bring the second claim for violation of the antiretaliation provision of Title V of the ADA, 42 U.S.C. § 12203; third claim for violation of the Rehabilitation Act, 29 U.S.C. § 794; fifth claim for breach of contract; and sixth claim for unfair trade practices in violation of California Business and Professions Code section 17200, *et seq.*  (FAC ¶¶ 72–102, 111–25.)  The School moves to dismiss, challenging the FAC on grounds including standing, statute of limitations, and failure to state a claim.  (*See* Mot.)

### III.    LEGAL STANDARD

#### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  The Article III case or controversy requirement limits a federal court's subject-matter jurisdiction, which includes the requirement that plaintiffs have standing to bring their claims.  *Chandler v. State*

*Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).  Rule 12(b)(1) jurisdictional attacks can be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply with equal force to Article III standing when it is being challenged on the face of the complaint.  *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).  Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

**B.    Rule 12(b)(6)**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a dismissal motion, a complaint need satisfy only the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The determination of whether a complaint satisfies this plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.    DISCUSSION

The School moves to dismiss the FAC on the following grounds: (1) the Unruh Act, ADA, and Rehabilitation Act claims are untimely; (2) Jenn and Glenn lack standing to bring their ADA retaliation and Rehabilitation Act claims; (3) the Gerses fail to state a contract claim; (4) the Gerses fail to state an unfair trade practices claim; and (5) the Gerses' claims for damages are deficient. (*See* Mot.)

### A.    Statute of Limitations

The events upon which the Unruh Act, ADA, and Rehabilitation Act claims are based took place more than two but less than three years before the Gerses initiated this action. (*See* FAC ¶¶ 40–52.) The School argues the claims are untimely because they are subject to a two-year statute of limitations, but the Gerses contend three-year limitations periods apply to these claims. (Mot. 15–18; Opp'n 4–11, ECF No. 26.) The Court considers these arguments with respect to the Gerses' claims in turn.

#### 1.    The Unruh Act Claim May Be Timely.

Harry claims the School violated the Unruh Act, California Civil Code section 51(f), which makes unlawful a violation of a right protected by the ADA. (FAC ¶¶ 103–10.) Federal courts are divided on whether the applicable statute of limitations for Unruh Act claims is two or three years, and there is no California Supreme Court authority on point. *See Kemp v. Regents of Univ. of Cal.*, No. C-09-4687 PJH, 2010 WL 2889224, at *6 (N.D. Cal. July 22, 2010) (discussing lack of consensus).

Regardless, the Court need not resolve the question because California law tolls limitation periods for individuals under the age of majority. Cal. Civ. Proc. Code § 352(a). Harry was sixteen years old at the time of the events giving rise to his claims. (FAC ¶ 10.) Construing the factual allegations in the light most favorable to

Harry, if Harry was sixteen in December 2016, the date of the latest alleged act or omission by the School, (*see* FAC ¶¶ 10, 52), then he could not have reached the age of majority until at earliest December 2017—less than two years before this federal action began.  Assuming without deciding that the appropriate limitation period is two years, Harry's claim may be timely if he can prove the limitation period was tolled until his eighteenth birthday.

Accordingly, the running of the statute of limitations is not "apparent from the face of the complaint."  *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980)).  Dismissal at this stage is not appropriate.  *Luong v. E. Side Union High Sch. Dist.*, 265 F. Supp. 3d 1045, 1050 (N.D. Cal. 2017) (declining to grant motion to dismiss in part because plaintiffs "may be able to prove the statute of limitations was tolled during their minority").

　　　　*2.*　　*The ADA Title III Claim May Be Timely.*

Harry claims the School violated Title III of the ADA, specifically 42 U.S.C. § 12182, which prohibits disability discrimination in places of public accommodation. (FAC ¶¶ 56–71.)

The ADA does not provide an express statute of limitations.  *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015).  Where Congress is silent on limitation periods for federal claims, courts "borrow the statute of limitations applicable to the most analogous state-law claim, so long as 'it is not inconsistent with federal law or policy to do so.'"  *Id.* (quoting *Wilson v. Garcia*, 471 U.S. 261, 266–67 (1985)).  Federal courts likewise borrow state tolling rules.  *Alexopulos v. S.F. Unified Sch. Dist.*, 817 F.2d 551, 555 (9th Cir. 1987).  However, in California, it remains unresolved whether the limitation period for claims under Title III of the ADA is two or three years.  *See Estate of Stern v. Tuscan Retreat, Inc.*, 725 F. App'x 518, 526 (9th Cir. 2018) ("We have not decided the limitations period for Title III claims, but the only *conceivable* options are California's two-year personal injury provision and its

three-year period for an action upon a liability created by statute." (citing Cal. Civ. Proc. Code §§ 335.1, 338(a)) (internal quotation marks omitted)).

As with the Unruh Act claim, the Court need not weigh in on this unsettled issue. Even if Harry's Title III claim were subject to a two-year limitation period, he may establish that the limitation period was tolled until he reached the age of majority. *See* Cal. Civ. Proc. Code § 352(a); *Alexopulos*, 817 F.2d at 555. Harry's Title III claim may be timely if the limitation period did not begin running until he reached the age of majority sometime in or after December 2017. (*See* FAC ¶¶ 10, 52.) Dismissal of this claim is therefore not appropriate.

### 3. *The ADA Title V Claim May Be Timely.*

The Gerses claim the School violated Title V of the ADA—specifically 42 U.S.C. § 12203(a)–(b), which prohibits retaliation against an individual who opposes an act made unlawful by the ADA, as well as interference with an individual's exercise of ADA rights. (FAC ¶¶ 72–81.) For reasons already explained, Harry's Title V claim may be timely irrespective of whether the appropriate statute of limitations is two or three years. However, the question remains whether Jenn and Glenn's Title V claims are timely, as they would not be similarly tolled. As with Title III claims, the appropriate statute of limitations to borrow from California law for Title V claims is unsettled. *See Sharkey*, 778 F.3d at 770.

The School, combining its discussion of the Gerses' retaliation claim with its discussion of the Title III claim, argues that the Court should adopt the two-year limitation period from personal injury claims. (Mot. 15–17.) The School appears to treat the Title V claim as an extension of the Title III claim. (*See, e.g.*, Mot. 15 (describing the antiretaliation claim as a "claim[] for relief under Title III"); Reply 11 n.4, ECF No. 27 (construing the § 12203 claim as "based on Title III").) But "Congress did not intend every title of the ADA to have the same limitations period." *Sharkey*, 778 F.3d at 770. The School does not specifically discuss or provide authority addressing the appropriate limitation period for retaliation claims under Title

V, nor does it explain why Title III and Title V claims should bear the same limitation period.  (*See* Mot. 15–17 (discussing Title III claims without identifying a state-law analogue to § 12203).)

The Gerses urge the Court to adopt the California three-year limitation period for actions upon a liability created by statute because the common law does not provide protection from retaliation for exercising rights protected by the ADA. (Opp'n 8 (citing *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1158–61 (1998)).)   The three-year limitation period should apply "where the liability is embodied in a statutory provision and was of a type which did not exist at common law." *Sharkey*, 778 F.3d at 773 (quoting *Brandenburg v. Eureka Redevelopment Agency*, 152 Cal. App. 4th 1350, 1359 (2007)); *see also Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 759 (2002) (recognizing that the three-year statute of limitations applies to ADA provisions that did not evolve from the common law).  However, the authority the Gerses cite to show that § 12203 did not evolve from the common law is inapposite.  *See City of Moorpark*, 18 Cal. 4th at 1158–61 (discussing common-law claims for wrongful discharge based on disability discrimination).  Indeed, no party provides cogent authority or argument showing that California common law provides, or does not provide, a liability of the type created by § 12203.  (*See* Opp'n 8; Reply 9–11 n.4.)

The arguments on this issue are underdeveloped or miss the mark.  Absent persuasive, relevant authority and argument, the Court declines to conclude that a two-year statute of limitations should apply to this claim.  Accordingly, for the limited purpose of deciding this Motion, the Court will not dismiss the Title V claim on the basis of untimeliness.

4.   *The Rehabilitation Act Claim Is Timely.*

The Gerses claim the School violated the Rehabilitation Act, 29 U.S.C. § 794(a), which prohibits disability discrimination in programs or activities receiving federal financial assistance.  (FAC ¶¶ 82–102.)  For reasons discussed above, Harry's

Rehabilitation Act claim may be timely irrespective of whether the appropriate statute of limitations is two or three years, but the timeliness of Jenn and Glenn's Rehabilitation Act claims remains in dispute.

There is no express limitation period for Rehabilitation Act claims, so the Court must borrow the period applicable to the most analogous state-law claim. *Sharkey*, 778 F.3d at 770. Some courts have applied a three-year statute of limitations to Rehabilitation Act claims, reasoning that California Government Code section 11135 provides the most analogous California claim. *See, e.g.*, *Luong*, 265 F. Supp. 3d at 1050; *Ticer v. Young*, No. 16-cv-02198-KAW, 2016 WL 4719272, at *5 (N.D. Cal. Sept. 9, 2016); *cf. Estate of Stern*, 725 F. App'x at 521 (assuming without deciding that a three-year limitations period applies to a Rehabilitation Act claim); *Krushwitz v. Univ. of Cal.*, 599 F. App'x 714, 715 (9th Cir. 2015) (same).

The School argues that the two-year statute of limitations for personal injury claims should apply to the Rehabilitation Act claim. (Mot. 17–18.) However, the Court agrees with the Gerses that Government Code section 11135, which carries a three-year limitation period and closely mirrors the text of the Rehabilitation Act, is a closer analogue.[3] (Opp'n 8–10); *see also Sharkey*, 778 F.3d at 771 (suggesting that courts should analyze "whether the forum state provides a state-law disability discrimination claim to which a closer analogy might be had" before applying the state's personal injury limitation period). Accordingly, the Court borrows the three-year statute of limitations applicable to Government Code section 11135. *See*

---

[3] *Compare* Cal. Gov't Code § 11135(a) ("No person in the State of California shall, on the basis of . . . disability . . . , be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that . . . receives any financial assistance from the state."), *with* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .").

*Sharkey*, 778 F.3d at 773.[4]  Given a three-year limitation period, the claim appears timely on its face.  Dismissal is not warranted.

**B.      Jenn and Glenn's Standing to Bring Retaliation Claims**

The School argues that Jenn and Glenn lack standing to bring retaliation claims under the Rehabilitation Act and Title V of the ADA because they did not suffer "individual retaliation." (Mot. 18–20.)

To establish Article III standing, a plaintiff must demonstrate (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The injury-in-fact element requires a plaintiff to show "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted).

The parties agree that nondisabled individuals may bring claims under the Rehabilitation Act and Title V of the ADA for retaliation they experience in advocating for the rights of disabled persons if they allege a concrete and particular injury separate and distinct from the disabled persons' injuries.   (Mot. 19; Opp'n 11–12; Reply 12–13); *see also Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824–28 (9th Cir. 2009) (discussing nondisabled person's standing to bring retaliation claims under Rehabilitation Act and Title II of the ADA).  However, the parties disagree as to whether the FAC sufficiently alleges that Jenn and Glenn suffered such an injury.

---

[4] The Court respectfully declines to follow the reasoning of the district court decisions the School cites.  Neither court expressly analyzed whether Government Code section 11135 is the claim most analogous to a Rehabilitation Act claim; both rest their reasoning on decisions predating *Sharkey* that assumed without deciding that the two-year personal injury limitation period applied.  *See C.C. v. Rocklin Unified Sch. Dist.*, No. 2:17-cv-02645-MCE-AC, 2019 WL 803904, at *3–4 (E.D. Cal. Feb. 21, 2019); *Hartline v. Nat'l Univ.*, No. 2:14-cv-0635 KJM AC (PS), 2015 WL 4716491, at *5 (E.D. Cal. Aug. 7, 2015).

Construing the FAC in the light most favorable to the plaintiffs, Jenn and Glenn adequately allege injury: as a result of their requests for accommodation of Harry's disabilities, they suffered "direct and indirect expenses incurred as a result of HARRY's dismissal" such as lost tuition, losses resulting from seeking alternative schooling, and out-of-pocket costs for treatment.  (FAC ¶¶ 52, 54–55.)  The School's argument that Jenn and Glenn must have suffered "*individual retaliation*" appears to assume that Harry's dismissal categorically could not have invaded Jenn and Glenn's legally protected interests.  (Mot. 19.)  But "parents have a recognized legal interest in the education and upbringing of their child."  *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 529 (2007) (discussing parents' standing to pursue claims under the Individuals with Disabilities Education Act).

The allegations in the FAC, taken as true, identify legal interests of Jenn and Glenn adversely impacted by the School's retaliatory dismissal of their child.  The Court declines to dismiss Jenn and Glenn's retaliation claims.

## C.    Breach of Contract Claim

The Gerses claim the School breached the Enrollment Contract by discriminating against Harry on the basis of his disability, failing to provide an effective education program for Harry after being put on notice of his disabilities, failing to provide reasonable accommodations and modifications, and terminating the Enrollment Contract without legitimate justification.  (FAC ¶¶ 111–15.)  The School contends that the Gerses' contract claim must be dismissed because they have not identified a breach of any particular term of the Enrollment Contract.  (Mot. 20–21.)  The Gerses respond that the School breached the Enrollment Contract because "no term permitted" the School to unilaterally dismiss Harry.  (Opp'n 15–16.)

To state a claim for breach of contract under California law, a plaintiff must plead: (1) a contract;  (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to plaintiff.  *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968); *Tribeca Cos., LLC v. First Am. Title Ins. Co.*,

239 Cal. App. 4th 1088, 1109 (2015).  At the pleading stage, the allegations must permit the court "generally to discern at least what material obligation of the contract the defendant allegedly breached."  *Langan v. United Servs. Auto Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014).

The operative pleading belies the Gerses' argument that the Enrollment Contract did not permit the School to unilaterally dismiss Harry.  According to the FAC, the Enrollment Contract contained provisions contemplating a student's dismissal in the School's sole discretion.  (FAC ¶¶ 34–35.)  In pertinent part, according to the FAC, the Enrollment Contract gives the School the right to dismiss, in its "sole discretion," a student who "has been unable to meet the academic, social or behavioral standards of the school based upon the administration's exclusive interpretation of such standards."  (FAC ¶ 35.)  In any event, the Gerses allege only the School's rights under the Enrollment Contract.  (*See* FAC ¶¶ 30–36.)  They fail to identify the School's obligations, let alone any express or implied obligation under the Enrollment Contract that the School breached by dismissing Harry.  As the Court cannot "discern . . . what material obligation *of the contract* the [School] allegedly breached," this claim must fail.  *Langan*, 69 F. Supp. 3d at 979–80 (emphasis added).

The Enrollment Contract has not been presented here, so the Court cannot determine whether amendment would be futile.  Accordingly, the breach of contract claim is dismissed with leave to amend.

**D.    Unfair Trade Practices Claim**

Plaintiffs claim the School engaged in unfair business practices by discriminating against Harry on the basis of his disability, unilaterally dismissing him in response to his request for modification of the School's policies, failing to refund tuition, and having the Gerses make an uninformed decision to enter a one-sided agreement.  (FAC ¶¶ 116–25.)

California's unfair competition law prohibits "any unlawful, unfair or fraudulent business act or practice."   Cal. Bus. & Prof. Code § 17200.   "By

proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation and internal quotation marks omitted). An unfair business practices claim may be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320–25 (2011) (discussing economic injury requirement).

The School argues the Gerses fail to state an economic injury resulting from the alleged unfair practices. (Mot. 21.) Construing the facts liberally, the Gerses have pleaded economic injury in the form of lost tuition and costs associated with finding alternative schooling for Harry. (*See* FAC ¶¶ 55, 125.) The School also argues the claim is derivative of the Gerses' disability discrimination and retaliation claims. (Mot. 21.) Even if true, the School does not explain why this warrants dismissal; after all, section 17200 is designed to borrow violations of other laws. *Cel-Tech*, 20 Cal. 4th at 180; *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (2010) ("Virtually any law—federal, state or local—can serve as a predicate for an action under Business and Professions Code section 17200.").

Finally, the School contends California Civil Code section 1670.5, which describes the contract defense of unconscionability, may not undergird this claim. (Mot. 21–22; *see also* FAC ¶ 118 (citing Cal. Civ. Code § 1670.5).) The School fails to provide authority showing that unconscionability cannot support a section 17200 claim; the sole decision the School cites in support of its argument assumed without deciding that unconscionability *could* support such a claim. (*See* Mot. 22 (citing *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1540 (2003).) The Court declines to dismiss the claim on this basis. *Pinel v. Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930, 938 (N.D. Cal. 2011).

For these reasons, the Court declines to dismiss the unfair trade practices claim.

**E.    Requested Relief**

The School argues that the Gerses have not adequately pleaded their special damages and are not entitled to some categories of relief they demand.  (Mot. 22–24.)

*1.    The Parties Agree Special Damages Are Insufficiently Pleaded.*

In their prayer for relief, the Gerses request special damages under their Rehabilitation Act, Unruh Act, contract, and unfair trade practices claims.  (FAC, Prayer for Relief ¶¶ 2–5.)

Under federal pleading requirements, "[i]f an item of special damage is claimed, it must be specifically stated."  Fed. R. Civ. P. 9(g).  Under this rule, a "bare allegation of the amount of pecuniary loss" is insufficient.  *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998).  The rule is designed to "inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint."  *Great Am. Indem. Co. v. Brown*, 307 F.2d 306, 308 (5th Cir. 1962).

The School argues that the Gerses have not sufficiently specified the nature of their special damages.  (Mot. 22–23.)  The Gerses concede that "the Second through Sixth Claims of relief could be pleaded with more specificity to re-allege special damages."  (Opp'n 20.)  Indeed, the Gerses only cursorily identify categories of expenses they incurred, including "tuition, . . . ensuing losses resulting from seeking out alternative schooling, [and] out of pocket costs for treatment."  (FAC ¶ 55.)  Although the Gerses need not "allege a specific dollar amount," the FAC's allegations are not enough to satisfy the heightened pleading requirements of Rule 9(g).  *Isuzu Motors*, 12 F. Supp. 2d at 1047.  Accordingly, the Court dismisses the Gerses' claims for special damages with leave to amend.

*2.    Rule 12(b)(6) Is Not the Proper Vehicle for the School's Other Damages Arguments.*

The School also contends general and special damages are not recoverable for the Rehabilitation Act and unfair trade practices claims.  (Mot. 22–24.)

A demand for an improper remedy is not a proper basis for a Rule 12(b)(6) motion. *Cent. Sierra Envtl. Res. Ctr. v. Stanislaus Nat'l Forest*, 304 F. Supp. 3d 916, 955 n.28 (E.D. Cal. 2018) ("Courts do not grant motions under Rule 12(b)(6) 'merely because a plaintiff requests a remedy to which he or she is not entitled.'" (quoting *Massey v. Banning Unified Sch. Dist.*, 256 F. Supp. 2d 1090, 1092 (C.D. Cal. 2003))). "It need not appear that plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Massey*, 256 F. Supp. 2d at 1092 (quoting *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985)).

The Court acknowledges that "[t]he issue of whether monetary damages are available for retaliation claims under the Rehabilitation Act has not been decided by this Circuit." *Lee v. Natomas Unified Sch. Dist.*, 93 F. Supp. 3d 1160, 1170 (E.D. Cal. 2015). However, even if the remedies requested are improper, the FAC still sets forth forms of relief available to the Gerses for these claims. (*See* FAC, Prayer for Relief ¶¶ 2, 5 (requesting equitable relief for the Rehabilitation Act claim and restitution for the unfair trade practices claim).) As such, dismissal under Rule 12(b)(6) is inappropriate.[5]

---

[5] The Court also declines to examine the School's arguments under the lens of Rule 12(f). *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010) ("Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law.").

## V. CONCLUSION

For the reasons discussed above, the Court orders as follows:

1.      Plaintiffs' fifth claim for breach of contract is **DISMISSED** with leave to amend.

2.      Plaintiffs' special damages allegations for the Rehabilitation Act, Unruh Act, contract, and unfair trade practices claims are **DISMISSED** with leave to amend.

3.      The Motion to Dismiss is **DENIED** in all other respects.

4.      Plaintiffs may file a Second Amended Complaint within fourteen (14) days of this Order curing the deficiencies identified in this Order.  If Plaintiffs do not file a Second Amended Complaint in that period, Defendant shall file an Answer to Plaintiffs' First Amended Complaint within twenty-one (21) days of this Order.

**IT IS SO ORDERED.**

August 7, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**